PD-1329-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/8/2015 7:44:38 PM
Accepted 10/9/2015 3:06:00 PM
ABEL ACOSTA
CLERK

# TO

# THE COURT OF CRIMINAL APPEALS OF TEXAS

## AUSTIN, TEXAS

## THE STATE OF TEXAS

### Appellant,

## V.

## CHRISTOPHER ALEXSON PAPPILLION

### Appellee

APPEALED FROM THE COURT OF APPEALS, 13th DISTRICT
AT CORPUS CHRISTI, TEXAS
CASE NUMBER: 13-14-00588-CR
24th District Court, Victoria County, Texas
Trial Court Cause No. 14-04-27885-A-CR

# PETITION FOR DISCRETIONARY REVIEW

Stephen D. Jackson
SBOT No. 00784324
Law Offices of Stephen D. Jackson & Associates
215 Simonton
Conroe, Texas 77301
Phone: 936-756-5744
Facsimile: 936-756-5842

FILED IN
COURT OF CRIMINAL APPEALS

October 9, 2015

ABEL ACOSTA, CLERK

# Table of Contents

Identity of Parties and Counsel ................................................................ii

Index of Authorities............................................................................iii

Statement Regarding Oral Argument................................................... 1

Statement of the Case .......................................................................... 1

Statement of Procedural History ......................................................... 2

Ground for Review............................................................................... 2

      Did the Court of Appeals err when it held that the affidavit signed by the magistrate established probable cause to search 201 Wearden Dr.?

Argument............................................................................................. 2

Prayer for Relief................................................................................. 12

Appendix ........................................................................................... 15

## Identity of Parties and Counsel

Judge:         Honorable Robert C. Cheshire

Prosecutor:       Mr. Edward Paul Wilkinson
            Assistant Criminal District Attorney
            SBOT No. 24052674
            205 N. Bridge St., Ste 301
            Victoria, Texas 77901-6576

Defense Counsel:     Mr. Brent Andrew Dornburg
            SBOT No. 24003930
            120 N. Main St.
            Victoria, Texas 77901

Appellant:       The State of Texas

Appellant's Attorney:   Mr. Brendan Wyatt Guy
            SBOT No. 24034895
            205 N. Bridge St., Ste 301
            Victoria, Texas 77901-6576
            Phone: 361-575-0468

Appellee's Attorney:    Mr. Stephen D. Jackson
            Law Offices of Stephen D. Jackson &
            Associates
            SBOT No. 00784324
            215 Simonton
            Conroe, Texas  77301
            Phone: 936-756-5744

            Mr. Paul Morrison
            Law Offices of Stephen D. Jackson &
            Associates
            SBOT No. 24079028
            215 Simonton
            Conroe, Texas 77301
            Phone: 936-756-5744

# Index of Authorities

## United States Supreme Court Cases

*Aguilar v. Texas*, 378 U.S. 108 (1964) ................................................................. 12

*Franks v. Delaware*, 438 U.S. 154 (1978) .............................................................. 4

*Illinois v. Gates*, 462 U.S. 213 (1983) ............................................................. 6, 7, 9

*U.S. v. Lefkowitz*, 285 U.S. 452 (1932) ................................................................ 12

## Texas Court of Criminal Appeals Cases

*Avery v. State*, 545 S.W.2d 803 (Tex. Crim. App. 1977) ..................................... 6, 8

*Casey v. State*, 215 S.W.3d 870 (Tex. Crim. App. 2007) ......................................... 8

*Cates v. State*, 120 S.W.3d 352 (Tex. Crim. App. 2003) .......................................... 4

*Dixon v. State*, 206 S.W.3d 613 (Tex. Crim. App. 2006) ......................................... 7

*Janecka v. State*, 937 S.W.2d 456 (Tex. Crim. App. 1996) (en banc) ...................... 4

*Johnson v. State*, 68 S.W.3d 644 (Tex. Crim. App. 2002) ........................................ 4

*Rodriguez v. State*, 232 S.W.3d 55 (Tex. Crim. App. 2007) ..................................... 6

*State v. McLain*, 337 S.W.3d 268 (Tex. Crim. App. 2011) ....................................... 4

*State v. Steelman*, 93 S.W.3d 102 (Tex. Crim. App. 2002) ..................................... 10

## Texas Court of Appeals Cases

*Blake v. State*, 125 S.W.3d 717 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ......
................................................................................................................... 6, 8

*Brown v. State*, 243 S.W.3d 141 (Tex. App.—Eastland 2007, pet. ref'd) ............ 6, 8

*Elardo v. State*, 163 S.W.3d 760 (Tex. App.—Texarkana 2005, pet. ref'd) ............ 7

# Texas Rules of Appellate Procedure

TRAP 66.3(f)...................................................................................................... 2

## Statement Regarding Oral Argument

Appellee believes that oral argument would assist the Court in disposition of the issues presented in this petition. Appellee respectfully requests oral argument.

## Statement of the Case

*Nature of the Case:*        This is an appeal of the Court of Appeals' reversal of the trial court's decision to grant Appellee's motion to suppress.

*Trial Court:*        The Honorable Judge Robert C. Cheshire, 24th District Court, Victoria County, Texas.

*Trial Court's Disposition:*    The trial court granted Appellee's motion to suppress. The State appealed the trial court's decision.

*Court of Appeals' Disposition:*  The Court of Appeals reversed the trial court's decision to grant Appellee's motion to suppress and remanded the case to the trial court.

1

## Statement of Procedural History

(1)  The Court of Appeals' opinion was handed down on July 23, 2015.

(2)  A Motion for Rehearing was filed on August 20, 2015.

(3)  The Motion for Rehearing was denied on September 8, 2015.

(4)  A Motion for En Banc Reconsideration was filed on September 19, 2015 and a Motion for Leave to Consider the Motion for En Banc Reconsideration was filed on September 21, 2015. Neither of these motions had been ruled on as of the date this Petition for Discretionary Review was filed.

(5)  The Petition for Discretionary Review is due on October 8, 2015.

## Ground for Review

Did the Court of Appeals err when it held that the affidavit signed by the magistrate established probable cause to search 201 Wearden Dr.?[1]

## Argument

Review is proper because the "court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision."[2] The Court of Criminal Appeals should reverse

---

[1] See Appendix, Court of Appeals' opinion, pg. 13
[2] Tex. R. App. P. 66.3(f)

2

the Court of Appeals' decision and affirm the trial court's decision to grant Appellee's motion to suppress.

The Court of Appeals erred when it held that the affidavit signed by the magistrate established probable cause to search 201 Wearden Dr. This case presents extraordinary circumstances in that should the Court's decision stand it would reward a poor and deceitful investigation by law enforcement and encourage law enforcement to leave out material information necessary for a magistrate to make a determination of probable cause. Law enforcement could simply make a false conclusory statement that the undercover purchase took place at a given location, without having a credible informant, no first hand observation of what took place, and no surveillance of any activity consistent with drug activity.

**A. The search warrant affidavit did not establish probable cause to search 201 Wearden Dr. because of the *Franks* violation contained in the affidavit.**

Appellee asks this Court to find that the search warrant affidavit does not contain probable cause due to the *Franks* violation contained in the affidavit because after removing the sections affected by the *Franks* violation, the remaining sections do not establish probable cause.

Upon review of a motion to suppress, an appellate court is to give almost total deference to a trial court's rulings on a questions of historical fact and

3

application of law to fact questions that turn on the evaluation of credibility and demeanor and review de novo application of law to fact questions that do not turn on credibility and demeanor.[3] When a trial court reviews a search warrant affidavit, there are no credibility determinations and the court is constrained to the four corners of the affidavit.[4] The information contained within a search warrant affidavit is assumed to be truthful.[5] When a search warrant affidavit is challenged on the grounds that it contains false information, the trial court is not limited to the four corners of the affidavit.[6]

In a *Franks* hearing, the trial court is owed great deference as sole fact-finder and judge of the witnesses' credibility.[7] At the hearing, if an allegation of perjury or reckless disregard for the truth is established by the defendant, and, with the affidavit's false information set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to same extent as if probable cause was lacking on the face of the affidavit.[8] An alleged *Franks* violation must relate to a material fact that is necessary to a finding of probable cause.[9]

---

[3] *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).
[4] *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011).
[5] *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978).
[6] *Cates v. State*, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003).
[7] *Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996) (en banc).
[8] *Franks*, 438 U.S. at 156.
[9] *See id.* at 155–56.

After the sections containing the *Franks* violation are removed from the affidavit in this case, the remaining sections do not establish probable cause. Sections 7a through 7e created the appearance that confidential informant #254 ("CI") completed the controlled purchase. Those sections must be removed due to the *Franks* violation because they are not true and are material to the basis for probable cause. The State conceded at the motion to suppress hearing that without sections 7a to 7e included in the affidavit, there would be no probable cause.[10] Furthermore, the testimony at the hearing does not save the flawed affidavit by establishing probable cause. The testimony at the hearing established that the controlled purchase was done by a completely different person who was not monitored by law enforcement and was untrustworthy.[11]

**B. Probable cause did not exist to search 201 Wearden Dr. because the controlled purchase was done by an untrustworthy source.**

In this case, after the testimony given at the suppression hearing by Officer Paine, and setting aside the false information contained in the search warrant affidavit, there was no substantial basis upon which the magistrate could have found probable cause to issue the search warrant in this case because the purchase was done by an untrustworthy source.

---

[10] RR Vol. 1, 22:8-14.
[11] RR Vol.1, 10:23-11:10.

Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location.[12] The test is whether a reasonable reading by the magistrate would lead to the conclusion that the affidavit provided a substantial basis for the issuance of the warrant.[13] A reviewing court is to defer to all reasonable inferences the magistrate could have made.[14]

A mere conclusory statement gives the magistrate virtually no basis for making a judgment regarding probable cause.[15] An informant's veracity and reliability are highly relevant considerations in the totality of the circumstances review.[16] Evidence that the informant had previously provided reliable information is sufficient to establish the informant's veracity.[17] An informant's reliability can also be established through information that has previously led to the arrest of several other individuals.[18] Prior arrests based on an informant's information is important to establishing an informant's credibility and reliability because it can be inferred that the police would not repeatedly act on information from a person who

---

[12] *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007).
[13] *Id.*
[14] *Id.* at 61.
[15] *Illinois v. Gates*, 462 U.S. 213, 239 (1983).
[16] *Id.* at 231.
[17] *Brown v. State*, 243 S.W.3d 141, 146 (Tex. App.—Eastland 2007, pet. ref'd) (citing *Avery v. State*, 545 S.W.2d 803, 804 (Tex. Crim. App. 1977).
[18] *Blake v. State*, 125 S.W.3d 717, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

has not proven by experience to be reliable.[19] An informant's tip should be corroborated through the independent investigation of the police or through other sources of information.[20] Under the totality of the circumstances, the strong nature of the basis of knowledge factor, i.e. personal observation, is not sufficient to compensate for the complete lack of the veracity factor or other indicia of reliability.[21]

Once sections 7a through 7e are removed from the affidavit as a result of the testimony at the *Franks* hearing, testimony by the officer that the controlled purchase was done by an untrustworthy source cannot support probable cause. Officer Paine testified that Ivan Casas ("Casas") did the buy at 201 Wearden Dr.[22] He also testified that Casas is not trustworthy.[23] In addition, the officer testified that he did not speak with Casas.[24] There is no testimony as to how the officer knew that none of the other informants, including Casas, did not have any cocaine. There is no testimony that the officer checked Casas for drugs prior to him entering the residence. In fact, the officer could not have checked Casas because he never even spoke with him that night.[25] Furthermore, there was no monitoring of what took place in the house at 201 Wearden Dr. because the CI, who was wearing the

---

[19] *Dixon v. State*, 206 S.W.3d 613, 617 (Tex. Crim. App. 2006).

[20] *Gates*, 462 U.S. at 241–42.

[21] *Elardo v. State*, 163 S.W.3d 760, 767 (Tex. App.—Texarkana 2005, pet. ref'd).

[22] RR Vol. 1, 10:21-25.

[23] RR Vol. 1, 11:6-7.

[24] RR Vol. 1, 12:2-3.

[25] RR Vol. 1, 12:2-3.

wire, did not enter the residence. The only evidence of what happened inside 201 Wearden Dr. comes from an untrustworthy source.[26]

The testimony at the hearing provided no evidence of credibility or reliability of the person who went inside the house and conducted the controlled purchase. There is no evidence that Casas had provided reliable information in the past.[27] Therefore, there is no evidence that any information he has provided in the past has led to the arrest of other individuals.[28] There is no basis that anything Casas said or did should be believed. In fact, Officer Paine stated that Casas, the person he relied on for the information in this case was not trustworthy.[29] It is not a reasonable inference to believe that information from an untrustworthy source is credible and reliable.

The probative force is determined by how strongly it serves to make more or less probable the existence of a material fact in the case.[30] The claim that a controlled purchase was conducted by an untrustworthy source removes all probative force from the facts obtained during the hearing testimony. The credibility and reliability of a confidential informant is "highly relevant" in the

---

[26] RR Vol. 1, 11:6-7.

[27] *See Brown v. State*, 243 S.W.3d 141, 146 (Tex. App.—Eastland 2007, pet. ref'd) (citing *Avery v. State*, 545 S.W.2d 803, 804 (Tex. Crim. App. 1977).

[28] *See Blake v. State*, 125 S.W.3d 717, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

[29] RR Vol. 1, 11:6-7.

[30] *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

consideration of a totality of the circumstances review.[31] Affidavits include information regarding the credibility and reliability of the source because it is very important to know where the information is coming from when determining whether there is probable cause to search a person or place. A magistrate must be assured that the facts relied on the affidavit are true. If an affidavit contains material information that is false it undermines the entire warrant process and rewards poor and deceitful law enforcement investigations.

In addition, an affidavit that did not include a basis for the knowledge alleged in the affidavit would weaken the argument that probable cause exists. An affidavit that claimed the basis for the knowledge alleged in the affidavit came from a source that is not trustworthy would not be signed by a magistrate. If Officer Paine's statement that Casas was untrustworthy been included in the officer's own affidavit, the search warrant would not have been signed.

**C. Anonymous sources standing alone are not sufficient to establish probable cause.**

After the sections affected by the *Franks* violation are removed from the affidavit, and because the purchase was conducted by an untrustworthy source, the remaining information contained in the affidavit regarding anonymous sources does not establish probable cause.

---

[31] *Illinois v. Gates*, 462 U.S. 213, 231 (1983).

A mere anonymous tip, standing alone, does not establish probable cause to search.[32] All that is left in the affidavit after the *Franks* violation sections are removed is a statement that "multiple sources" have given information that Appellee is a drug dealer.[33] There is no information given as to whether the "multiple sources" are credible or reliable. The information was not corroborated by the surveillance done by the Victoria Police Department because no further action was taken.[34] Standing alone, this anonymous information is conclusory and does not support probable cause to search 201 Wearden Dr.

## Conclusion

The problem is that we have three different courts reviewing the affidavit in this case and the latter two are trying to determine if the magistrate made a proper decision to find probable cause. The trial court had more information than the magistrate did and, after a hearing, where the trial court is able to best judge the credibility and demeanor of the witnesses found that there was no probable cause to search the residence. This Court must give some weight to that determination because the trial court is best able to determine the credibility of the affiant. The trial court's finding that the statements included in the affidavit were made with at

---

[32] *State v. Steelman*, 93 S.W.3d 102, 108 (Tex. Crim. App. 2002).
[33] RR Vol. 1, Defense Exhibit 2, pg. 4.
[34] RR Vol. 1, Defense Exhibit 2, pg. 4.

10

least a reckless disregard for the truth, as the Court of Appeals did as well, calls into question the statements that the purchase took place at the residence.

The fact that Casas was a part of the activity that took place at the 201 Wearden Dr. is relevant because it makes the key determination of probable cause, that a controlled purchase took place at that address, less likely. Based on the testimony of Officer Paine himself, he stated that Casas is not trustworthy, that he had not dealt with him before, and that he had not spoken with him that night.[35] It is unreasonable to infer that Casas' account of the events are truthful when the officer specifically testified that Casas is not trustworthy. It is unknown whether Casas had drugs on him prior to arriving at the residence because he was not checked for drugs prior to entering the residence. The reason the affidavit states that the CI was searched prior to the start of the investigation is because the affiant wants to eliminate the possibility that the drugs may come from somewhere else other than the controlled purchase. Besides the CI, none of the other people involved in the events that night were searched. It is unknown whether any of these people, or Casas, had drugs on them and lied to keep themselves out of trouble by saying they did not have any drugs on them.

There is no probable cause to search the Appellee's residence in this case. The sections included in the affidavit to establish probable cause, sections 7a

---

[35] RR Vol. 1, 11:1-7, 12:2-3.

11

through 7e must be removed due to the *Franks* violation. The testimony at the hearing that states a drug transaction took place at 201 Wearden Dr. is based on information from an untrustworthy person and this lack of credibility and reliability cannot support a finding of probable cause. Lastly, the anonymous "multiple sources" that are now standing alone, do not support probable cause to search 201 Wearden Dr. "Informed and deliberate determinations of magistrates empowered to issue warrants ... are to be preferred over the hurried action of officers ... who may happen to make arrests."[36] In this case, the informed and deliberate decisions of officers when writing affidavits that contain at least a reckless disregard for the truth cannot be preferred over Fourth Amendment protections from unreasonable search and seizures. Allowing untrustworthy sources to establish probable cause to support the issuance of search warrants violates the Fourth Amendment.

## Prayer for Relief

Appellee respectfully prays that this Court grant review and, after full briefing on the merits, reverse the judgment of the Court of Appeals and affirm the trial court's decision to grant Appellee's motion to suppress, and grant Appellee such other and further relief to which he may be justly entitled.

---

[36] *Aguilar v. Texas*, 378 U.S. 108, 110–11 (1964) (citing *U.S. v. Lefkowitz*, 285 U.S. 452, 464 (1932).

Respectfully submitted,

Law Offices of Stephen D. Jackson &
Associates
215 Simonton
Conroe, Texas 77301
(936) 756-5744
(936) 756-5842 facsimile

By: _____
    Stephen D. Jackson
    Texas Bar Number 00784324
    Attorney for Appellee

## Certificate of Service

I certify that true and correct copies of the above Petition for Discretionary Review were served on the State Prosecuting Attorney and the Victoria County District Attorney's Office, at 205 N. Bridge St., Suite 301, Victoria, Texas 77901, by certified mail, return receipt requested on October 8, 2015.

_____
Stephen D. Jackson

## Certificate of Compliance

I certify that a copy of the above and foregoing Petition for Discretionary Review has a word count of 2,469 after excluding the contents listed in Texas Rule of Appellate Procedure 9.4(i)(1).

_____
Stephen D. Jackson

14

**Appendix**



# NUMBER 13-14-00588-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellant,** |

**v.**

| | |
|---|---|
| **CHRISTOPHER ALEXSON PAPPILLION,** | **Appellee.** |

### On appeal from the 24th District Court of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Garza

Appellee, Christopher Alexon Pappillion, was charged with several drug-related

offenses[1] and filed a motion to suppress evidence. The trial court granted the motion and

---

[1] Specifically, Pappillion was charged by indictment with: (1) possessing with intent to deliver more than four but less than 200 grams of cocaine, a first-degree felony, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West, Westlaw through Ch. 46, 2015 R.S.); (2) possessing with intent to deliver more than 80 but less than 4,000 abuse units of lysergic acid diethylamide (LSD), a first-degree felony, *see id.*

the State of Texas now appeals, arguing by three issues that: (1) the trial court erred in determining that there was no probable cause to search Pappillion's residence; (2) the trial court erred in finding that there was a "reckless disregard for truth" in the search warrant affidavit; and (3) suppression of evidence was not the appropriate remedy for a *Franks* violation. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). We reverse and remand.

## I. BACKGROUND

On January 16, 2014, Victoria Police Department officers executed a search warrant at Pappillion's residence. The warrant was issued by a district judge two days prior based on a sworn affidavit by Detective Dennis Paine. The affidavit stated in relevant part as follows:

    a. Within the past 72 hours (2014.01.13.2146 y.m.d.t) the Victoria Police Department Special Crimes Unit (SCU) conducted a controlled purchase of cocaine through the use of a Confidential Informant (CI #254). **The information provided by the confidential informant has proven to be reliable and credible** and has been verified by officer observation and monitored recordings.

    b. The identity of the CI #254 will not be placed in this affidavit for the safety and security of the CI.

    c. The CI #254 met with VPD Detectives at a designated staging area prior to the Controlled Purchase. The CI #254 and the CI's vehicle were searched by this affiant and Detective McDonald, and no contraband was located. The CI #254 was fitted with a body wire to provide audio surveillance of the controlled purchase.

---

§ 481.1121(b)(3) (West, Westlaw through Ch. 46, 2015 R.S.); (3) possessing with intent to deliver more than 400 grams of "a synthetic chemical compound that is a cannabinoid receptor agonist that mimics the pharmacological effect of naturally occurring cannibinoids," a first-degree felony with a minimum sentence of ten years' imprisonment, *see id.* § 481.113(e) (West, Westlaw through Ch. 46, 2015 R.S.); (4) possessing more than four ounces but less than five pounds of marihuana, a state-jail felony, *see id.* § 481.121(b)(3) (West, Westlaw through Ch. 46, 2015 R.S.); (5) possessing with intent to deliver more than 28 grams but less than 200 grams of an "anabolic steroid or a substance that is chemically or pharmacologically related to testosterone and that promotes muscle growth," a second-degree felony, *see id.* § 481.114(c) (West, Westlaw through Ch. 46, 2015 R.S.); and (6) tampering with physical evidence, a third-degree felony, *see* TEX. PENAL CODE ANN. § 37.09(d)(1) (West, Westlaw through Ch. 46, 2015 R.S.).

d. The CI #254 was issued $300.00 of US Currency from the VPD Narcotics fund to purchase $300.00 of cocaine. The CI #254 responded to 201 Wearden Dr., where the controlled Purchase took place. Throughout the duration of the controlled purchase the CI #254 was monitored physically and through the body wire. The CI's vehicle was parked in the driveway of 201 Wearden for several minutes. After the cocaine was purchased from the location, the CI's vehicle left the location and was followed by SCU Detectives.

e. The CI #254 then met with this affiant and the other VPD SCU Detectives at a designated staging area. The cocaine that was purchased was collected by Detective McDonald. This affiant observed the substance to be a white hard chunk in a clear plastic sandwich bag. I recognized this substance to be cocaine from many previous narcotics arrests/investigations.

f. The substance was field tested by Sgt Fetters with a Nartec brand cocaine field tester which turned blue, indicating a positive result for the presence of cocaine. The substance was secured and transported to the VPD where it was weighed (13.26 net grams), and tagged in as evidence and secured in an evidence locker.

g. Through previous investigations this affiant knows that 201 Wearden Dr. is the residence of Christopher Pappillion W/M 03/01/80. The VPD SCU has police intelligence from multiple sources that Pappillion is a drug dealer. The VPD SCU performed some additional surveillance at the location and no further action was taken at that time.

h. An anonymous source within the past few months informed the VPD SCU with information provided alleged [sic] that Pappillion had a large safe in his bedroom that is full of Steroids, and other contraband.

. . . .

m. Based upon the above facts, through the perspective of this affiant's training and experience, this affiant has reason to believe and this affiant does believe that illegal narcotics are inside the residence in violation of the Texas Health and Safety Code.

(Emphasis in original.) In executing the warrant, police discovered various illegal drugs including cocaine, LSD, marihuana, synthetic marihuana, and steroids.

Pappillion was charged and moved to suppress the drug evidence, alleging that the actions of the Victoria Police Department violated his constitutional and statutory

3

rights. The motion specifically alleged that the affidavit upon which the search warrant was based was "improperly and illegally executed" because, among other things, the affidavit "does not reflect probable cause to justify the issuance of a search warrant" and contained information "that the affiant officer knew was false or would have known was false except for his reckless disregard for the truth."

At a suppression hearing, Paine testified that he is familiar with the facts contained in his affidavit. The following colloquy occurred:

Q. [Defense counsel] And in that affidavit you make the claim that C.I. 254 made a controlled purchase, correct?

A. [Paine]       Yes, sir.

Q.       What is a controlled purchase?

A.       It was a controlled purchase of a controlled substance or any narcotic under the supervision of the special crimes unit with the organization of a C.I. or an undercover [o]fficer . . . .

Q.       And in that affidavit he made a controlled buy, correct?

A.       Yes, sir.

Q.       And in reality he didn't make a controlled buy did he?

A.       In actuality, no, he didn't actually purchase the substance. It was a third-party that went into the location and purchased it.

Q.       And so just in summary of what happened you—and if I say anything incorrect, please let me know. Y'all searched the C.I., wired him, correct, so you can hear his conversation—

A.       Yes.

Q.       —and record it? . . . . There was a known party Nathan that he was going to purchase cocaine from, correct?

A.       Yes, sir.

4

Q. And he contacted Nathan and Nathan didn't have any cocaine, did he?

A. That's correct.

Q. So they picked up Nathan's car and picked up one of Nathan's friends, correct?

A. They remained in the C.I.'s vehicle and then picked up one of Nathan's friends, yes, sir.

Q. So they went and picked up Ivan Casas, correct?

A. Yes, sir.

Q. He was supposed to get Nathan some cocaine, correct?

A. Correct.

Q. He didn't have any?

A. That's correct.

Q. So he called his friend Jose Partida (phonetic), correct?

A. No. Jose was the second subject. Ivan was the last person they contacted, I'm sorry.

Q. Okay. Who was the fourth person—the third person he picked up?

A. Ivan.

Q. Ivan?

A. Yes.

Q. C.I. picked up Nathan first or Ivan first?

A. Nathan.

Q. They picked up Nathan?

A. Correct.

Q. And they picked up Ivan?

A. Jose.

5

Q.    And then they picked up Jose second?

A.    Yes, sir.

Q.    And Jose didn't have any cocaine, correct?

A.    That's correct.

Q.    So then he calls his supplier Ivan, right?

A.    Yes.

Q.    And they pick up Ivan and Ivan doesn't have any cocaine, correct?

A.    That's correct.

Q.    And Ivan texted to 201 Wearden?

A.    Yes, sir.

Q.    And leaves the vehicle and comes back with the cocaine, correct?

A.    That's correct.

Q.    You ever dealt with Ivan before?

A.    No, sir.

Q.    Know anything about his truthfulness or veracity?

A.    No, sir.

Q.    Is he trustworthy?

A.    No, sir.

Q.    And the confidential informant didn't witness the transaction, correct?

A.    I couldn't hear you.

Q.    The Confidential Informant No. 254 he didn't witness that transaction at 201 Wearden did he?

A.    No, sir, he did not go inside the residence.

Q.    And you didn't put that in the affidavit did you?

6

| | |
|---|---|
| A. | I don't believe so, sir. |
| Q. | So basically the C.I. purchased cocaine from Ivan, correct? You gave him money and got cocaine in receipt? |
| A. | Yes. |
| Q. | And you don't know who Ivan dealt with inside the house? |
| A. | He said it was a friend, a roommate of Mr. Pappillion. |
| Q. | Who said that? |
| A. | Ivan. |
| Q. | And when did you talk to Ivan that night? |
| A. | I didn't talk to him, sir, it was on the wire. |
| Q. | I'm sorry. |
| A. | It was on the wire. You could hear the conversation. |
| Q. | And you recently provided that wire to the D.A.'s office? |
| A. | Yes, sir. |
| Q. | But not with the initial case, right? |
| A. | No, sir. |
| Q. | And this offense report you used to review for this undercover buy—you didn't initially provide that to the D.A.'s office did you? |
| A. | No, sir. |

On cross-examination by the State, Paine testified that he did not put the names of Ivan, Nathan or Jose in the affidavit in order "[t]o protect the informant's identity." He testified that he was not trying to deceive the magistrate by leaving out the information that Ivan Casas, rather than the confidential informant, was the one who went into the location to buy the cocaine.

7

The trial court granted the motion to suppress. In its order, it stated that the information in the affidavit "is conclusory and lacks sufficient underlying facts to establish probable cause to issue a search warrant." The order further stated as follows:

> Concerning the actual purchase of cocaine at 201 Wearden Dr., the affidavit in this case only indicates that the CI "responded to 201 Wearden Dr., where the controlled purchase took place", "[t]he CI's vehicle was parked in the driveway of 201 Wearden for several minutes", and "[a]fter the cocaine was purchased from the location, the CI's vehicle left the location . . ." There is not any indication in the affidavit whether the contraband could only have been obtained from inside the suspected place.
>
> This case is distinguishable from Athey v. State, [No. 13-06-129-CR, 2007 WL 2389599, at *1 (Tex. App.—Corpus Christi Aug. 23, 2007, no pet.) (mem. op., not designated for publication)], the affiant in Athey indicating in the affidavit that he observed the informant "go directly into the suspected place" and setting forth in the affidavit that the contraband could have only been obtained from inside the suspected place.
>
> The testimony at the hearing also points out a "reckless disregard for the truth" Franks hearing issue. The statements in the affidavit create an inference that CI#254 went inside the residence at 201 Wearden and purchased the cocaine. The testimony at the hearing indicates that it was [a] person other than the CI that went inside the location and the CI then purchased the cocaine from this person, the CI not being a witness to any transaction occurring inside the location.

This appeal followed. See TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through Ch. 46, 2015 R.S.).

## II. DISCUSSION

### A. Standard of Review and Applicable Law

"The cornerstone of the Fourth Amendment and its Texas equivalent is that a magistrate shall not issue a search warrant without first finding 'probable cause' that a particular item will be found in a particular location." Rodriguez v. State, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007) (footnote omitted). "Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a

8

crime will be found at the specified location." *Id.* Probable cause is a "flexible and nondemanding" standard, but "probability cannot be based on mere conclusory statements of an affiant's belief." *Id.* at 60–61. Instead, the affiant must present an affidavit that "allows the magistrate to independently determine probable cause" and "the magistrate's action[s] cannot be a mere ratification of the bare conclusions of others." *Id.* (internal quotations omitted). Moreover, the facts stated in a search affidavit "must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified." *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011).

We do not analyze the affidavit in a hyper-technical manner; rather, we interpret it in a common-sensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. *Rodriguez*, 232 S.W.3d at 61. When in doubt, we defer to all reasonable inferences that the magistrate could have made. *McLain*, 337 S.W.3d at 272; *Rodriguez*, 232 S.W.3d at 61.

Ordinarily, we review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, where we give almost total deference to the historical facts found by the trial court and review de novo the trial court's application of the law. *McLain*, 337 S.W.3d at 271. However, when the trial court is determining whether probable cause exists to support the issuance of a search warrant, it makes no credibility determinations because the court is constrained to the four corners of the affidavit. *Id.* Accordingly, when we review a magistrate's decision to issue a warrant, we apply a "highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search." *Id.* "As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination." *Id.*

9

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155–56. Under *Franks*, the false statement in the affidavit must have been either intentional or made with reckless disregard for the truth, and must have been necessary to the finding of probable cause, in order to render the warrant invalid. *Dancy v. State*, 728 S.W.2d 772, 782 (Tex. Crim. App. 1987) (citing *Franks*, 438 U.S. at 155–56). A misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant based on it. *Id.* at 783 (citing *Franks*, 438 U.S. at 171).

## B.    Analysis

We find that Pappillion established by a preponderance of the evidence at the suppression hearing that Paine's affidavit contained a false statement and that Paine made the false statement with at least a reckless disregard for the truth. *See Franks*, 438 U.S. at 155–56. The affidavit stated in part that police "conducted a controlled purchase of cocaine through the use of a Confidential Informant" and that "[t]he CI #254 responded to 201 Wearden Dr., where the controlled Purchase took place." This was contradicted by Paine's testimony at the suppression hearing that the confidential informant "didn't actually purchase the substance," "did not go inside the residence," and did not witness the transaction at the residence.

The State urges us to conclude that there were no false statements in the affidavit.

10

The State notes that the affidavit merely stated (1) that the confidential informant "responded to 201 Wearden Dr.," (2) that the controlled purchase "took place" at that location, and (3) that the confidential informant's vehicle "left the location" after "the cocaine was purchased from the location." The State argues that these statements, taken individually, are true. That may be so. But, when taken together, the statements in Paine's affidavit—including the statement that police "conducted a controlled purchase of cocaine through the use of a Confidential Informant"—unmistakably implied that the confidential informant was the one who made the controlled purchase from Pappillion's residence. That implication was not true, according to Paine's suppression hearing testimony. Instead, Ivan Casas made the purchase.

The State points out that, according to the affidavit, the confidential informant was "monitored physically" by police and therefore could not logically have been inside the residence at any point. The State also notes that the affidavit stated that the confidential informant's vehicle was parked in the driveway of the residence for several minutes, and it argues that there would be "no logical reason" for the affidavit to have mentioned that fact "if the purchase did not actually take place in or near that automobile." We disagree. Interpreting the affidavit in this manner would be to adopt the "hyper-technical" approach disfavored by law. *See Rodriguez*, 232 S.W.3d at 61. Instead, construing the affidavit in a "common-sensical and realistic manner," we find that it contained false statements made with at least reckless disregard for the truth. We therefore overrule the State's second issue.

Nevertheless, a *Franks* violation is fatal to the warrant only if, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Franks*, 438 U.S. at 155–56. Here, even setting aside the statements

11

implying that the confidential informant was the one that purchased cocaine from Pappillion's residence, there was still a "substantial basis" upon which the magistrate could have found probable cause. In particular, it is undisputed that—as the affidavit stated—cocaine was indeed purchased from Pappillion's residence. The fact that it was someone other than the confidential informant that actually made the purchase does not rob this fact of its probative force.[2]

The affidavit additionally stated that, according to "multiple sources," Pappillion is a drug dealer. These "multiple sources" were purely anonymous, and there was no indication that their reports were credible. But, while an anonymous tip alone is generally insufficient to support a warrant, it is "nevertheless a circumstance to be considered, along with all of the other circumstances, in the determination of whether probable cause existed." *Flores v. State*, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010). Here, the anonymous reports that Pappillion was a drug dealer were accompanied by the fact that a drug transaction took place at Pappillion's residence. These facts, when taken together, established probable cause to search.

The trial court noted in its order that there was no "indication in the affidavit whether the contraband could only have been obtained from inside the suspected place." The affidavit did not explicitly state that the contraband could *only* have been obtained from inside Pappillion's house, but it did explicitly state that cocaine was purchased from that

---

[2] The affidavit emphasized that "[t]he information provided by the confidential informant has proven to be reliable and credible and has been verified by officer observation and monitored recordings"; whereas Paine conceded that he has never dealt with Casas before and knew nothing about his truthfulness or veracity. Paine then testified at the suppression hearing that Casas is not trustworthy.

But, according to the affidavit, cocaine was purchased from Pappillion's residence, and Paine's testimony did not contradict that fact. Therefore, Casas's trustworthiness was irrelevant to the determination of probable cause.

location. In any event, in order to establish probable cause, the affidavit only needed to establish a "fair probability"—not a certainty—that contraband would be found at the residence. *See Rodriguez*, 232 S.W.3d at 60.

Applying the "highly deferential" standard applicable to the issuance of warrants, we find that the affidavit, excluding all false and misleading statements, provided a "substantial basis" upon which the magistrate could have independently determined that there was a "'fair probability' that contraband or evidence of a crime will be found at the specified location." *See id.* Accordingly, the affidavit established probable cause, and the trial court erred in granting the motion to suppress. The State's first and third issues are sustained.

## III. CONCLUSION

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

DORI CONTRERAS GARZA,
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of July, 2015.

13